IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **VIRGINIA REED,** | ) | |
| | ) | **No. 3:13-cv-00009** |
| **Plaintiff,** | ) | |
| | ) | **Judge Nixon** |
| **v.** | ) | **Magistrate Judge Knowles** |
| | ) | |
| **AMERICAN CELLULAR, INC.,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Pending before the Court is Defendant American Cellular Inc.'s Motion for Summary Judgment ("Motion"). (Doc. No. 15.) For the reasons stated below, Defendant's Motion is **DENIED**.

## I.   BACKGROUND

### A.  Factual History[1]

Defendant American Cellular, Inc. ("ACI") is a Tennessee corporation that operates as a retail agent for Verizon Wireless selling cellular phones and accessories. Plaintiff Virginia Reed, born on February 9, 1949, was hired by ACI as an Account Executive in 1999. Reed was promoted to Store Manager of ACI's McMinnville store in 2003. ACI measures its stores' performance using a points system that tracks various statistical data for each store, including new account activations, upgrades, and accessory sales. (*See* Doc. No. 16-6.) In 2007, the McMinnville store was ACI's fifth most productive store as measured by total points. (*Id.* at 5.) However, the McMinnville store's production declined from 2007 through 2009. In 2009, McMinnville was ACI's twelfth most productive store. (*Id.* at 9.)

---

[1] Unless otherwise indicated, the facts in this section are undisputed and taken from Plaintiff's Response to Defendant's Concise Statement of Undisputed Material Facts (Doc. No. 22).

During her tenure as store manager, Reed reported to District Manager Sherry Riddle. (Doc. No. 16-8 at 6-7.) Reed contends that Riddle treated her differently than other store managers. (Doc. No. 21 ¶¶ 15–17.) For instance, Reed claims that Riddle was often "dismissive and rude," and criticized her more than other store managers. (*Id.* ¶ 15.) Reed also claims that while other store managers were permitted to hire sales representatives as necessary for their stores, Riddle insisted on participating in all employment decisions for the McMinnville store. (*Id.* ¶ 16.) Reed contends that she noticed a marked decline in support from Riddle beginning in 2008: Riddle rarely visited the store, Reed was unable to reach Riddle to get approval for a business deal resulting in the loss of a large sale, and Riddle was not available to participate in hiring decisions, so the McMinnville was short-staffed. (*Id.* ¶ 17.) Reed twice attempted to reach ACI co-owner Steve Ingram for assistance in 2008, but was only able to leave him messages that were eventually returned only by Riddle. (*Id.*)

From 2007 through 2009, Reed observed behavior that led her to the conclusion that Riddle discriminated against older workers. For instance, Reed claims that Riddle looked for age clues on resumes and admonished Reed not to "waste time scheduling interviews with older people." (*Id.* ¶ 16.) Reed also asserts that on the few occasions when she did arrange interviews with older applicants, Riddle was dismissive, telling Reed "you can't train older people for this job." (*Id.*) According to Reed, co-owner Ingram shared Riddle's discriminatory beliefs and repeatedly stressed the importance of hiring "young blood." (Doc. No. 21 ¶ 25.) Reed further argues that Riddle's attitudes towards older people extended to Reed, claiming she overheard Riddle telling other employees that Reed was too old to keep up and should retire. (Doc. No. 21-

2 ¶ 12.) Two other McMinnville employees, Lacy Stoner[2] and Joann Barnes, aver that Riddle made similar statements to them. (Doc. Nos. 21-17 ¶ 4; 21-18 ¶ 5.)

Reed states that on May 14, 2010, Riddle invited Reed to lunch and informed her that she would be removed from her store manager position as of June 1, 2010. (Doc. No. 21 ¶ 23.) Reed says Riddle told her that she was being "promoted" to the new position of Manager of Business Account Development, in which she would serve as an outside sales representative and travel around the state to solicit new business. (Doc. No. 16-1 at 16-17.) Reed told Riddle that she was aware that Verizon had eliminated its outside sales department the year before because it had not been profitable; Riddle responded that Reed could "make it work." (Doc. No. 21-2 ¶ 11.) Reed's income dropped from $42,868 in 2010 to $29,305 in 2011. (Doc. No. 16-2 at 88, 93.) Although Reed did not report to the new store manager in McMinnville, she continued to work out of the McMinnville store when she was not on the road. (*Id.*) Reed was sixty-one years old when she was removed from her store manager position. Reed's replacement, Brenda Reed, was forty-six.

Reed filed a complaint with ACI's Human Resources Department on June 11, 2010, alleging discrimination on the basis of her age. (Doc. No. 21-22.) Riddle wrote a memorandum responding to Reed's allegations in which she admitted that she looks for age clues on resumes, and stated that "younger people (under 40) do great with the wireless industry." (Doc. No. 21-23 at 4.) Riddle denied that she moved Reed to her new position because of her age, and claimed that Reed was removed from her position because of her lack of "production and quota attainment." (*Id.* at 2.)

---

[2] The parties alternately refer to Lacy Stoner as Lacy Powell. (*See, e.g.* Doc. No. 16-1 at 14.)

Brenda, the new manager in McMinnville, issued an "Employee Warning Notice Form" to Reed for "Rudeness" on June 28, 2010. (Doc. No. 21-24.) Reed claims that when she met with Brenda to discuss this charge of "rudeness," Brenda said "I'm very aware that you don't like American Cellular," which Reed took as an acknowledgement that Brenda knew of Reed's complaint to Human Resources about her demotion. (Doc. No. 16-1 at 22.) Brenda testified that she did not know about Reed's complaint until 2012. (Doc. No. 21-21 at 3.) Brenda subsequently issued Reed other Employee Warning Notice Forms, and Reed contends that all of these "write-ups" are unfounded. (Doc. No. 16-1 at 26-29.) Reed also contends that Brenda told other employees to tell customers that Reed no longer worked at the McMinnville store, even when she was in fact present in the store, in an effort to interfere with her sales. (Doc. No. 21-2 ¶ 14.)

In June 2012, Reed met with Ingram and Brenda. (Doc. No. 16-1 at 25.) Ingram informed Reed that the Manager of Business Account Development position was to be terminated, and Reed became a sales representative in the McMinnville store reporting to Brenda. (*Id.*) Reed claims Brenda was rude to her, limited her hours to a part-time schedule for many weeks, and intentionally scheduled Reed on days when she knew Reed had doctor's appointments set in advance. (Doc. No. 21-2 ¶ 17.) Reed also states that Brenda intentionally humiliated her on November 5, 2012, when a bank deposit envelope went missing; Brenda asked the assistant manager to search Reed's purse in the store in front of one of Reed's customers. (*Id.*) According to Reed, no other employee was searched at that time. (*Id.*)

### A. Procedural History

On November 12, 2010, Reed filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she suffered discrimination and retaliation in violation of

4

the Age Discrimination in Employment Act ("ADEA"). (Doc. No. 16-4.) The EEOC found reasonable cause to conclude that Reed faced unlawful discrimination and retaliation (Doc. No. 21-10 at 2) and issued a "Right to Sue" letter on October 12, 2012 (*see* Doc. Nos. 1 ¶ 6; 4 ¶ 5). Plaintiff filed her Complaint in this Court on January 7, 2013, alleging ACI violated the ADEA by discriminating against her because of her age and retaliating against her for reporting the discrimination. (Doc. No. 1 ¶¶ 21–28.) Plaintiff also alleges that ACI's age discrimination violated the Tennessee Human Rights Act ("THRA"). (*Id.* ¶¶ 29–32.)

Defendant filed its Motion for Summary Judgment on April 18, 2014 (Doc. No. 14), with a Memorandum in Support (Doc. No. 17), a Concise Statement of Undisputed Material Facts (Doc. No. 18), and seventeen exhibits (Doc. Nos. 16-1 to 16-17). Plaintiff filed a Response to Defendant's Motion on May 14, 2014 (Doc. No. 21), as well as a Response to Defendant's Concise Statement of Undisputed Material Facts (Doc. No. 22), and thirty exhibits (Doc. Nos. 21-2 to 21-31). Defendant filed a Reply on May 27, 2014. (Doc. No. 25.)

## II.    LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute." *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Blizzard*, 698 F.3d at 282 (internal citations and quotations omitted).

## III. ANALYSIS

Plaintiff Virginia Reed asserts two claims as the basis for this employment discrimination lawsuit against Defendant ACI: (1) age discrimination under the ADEA and the THRA, and (2) retaliation in violation of the ADEA and THRA. The Court first analyzes Plaintiff's discrimination claims and then turns to her retaliation claims.

### A. Discrimination Claims

Under the ADEA, an employer is prohibited from taking adverse employment actions against an individual "because of such individual's age." 29 U.S.C. § 623(a)(1) (2012). "A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Unlike a Title VII discrimination plaintiff, an ADEA plaintiff cannot prove her case by establishing that age was simply a "motivating factor"; instead, the plaintiff has "the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177 (2009). Age discrimination in employment is likewise prohibited by the THRA. Tenn. Code Ann. § 4-21-401(a) (2014). Age discrimination claims brought under the THRA are

6

assessed under the same analytical framework as ADEA claims.[3] *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014).

Reed contends that her removal from the position of Store Manager at ACI's McMinnville store and placement as Manager of Business Account Development constituted a demotion because the change in job title accompanied a reduction in pay, status, and responsibility, as she no longer supervised other employees. (Doc. No. 21 ¶¶ 23–24.) Reed alleges that her demotion was motivated by discriminatory animus and therefore constituted age discrimination under the ADEA and THRA. (Doc. No. 1 ¶¶ 21–32.) The Court finds Reed has presented sufficient direct evidence of age discrimination to survive ACI's motion for summary judgment; however, even were the Court to find she had not presented direct evidence of discrimination, she has still produced enough circumstantial evidence to create a genuine issue of material fact as to whether ACI demoted Reed because of her age.

     1.  Direct Evidence of Discrimination

Reed asserts that she has presented direct evidence of discrimination. (Doc. No. 21 at 16–17.) In particular, Reed claims that her deposition testimony and the affidavits of two of her coworkers establish that Riddle made discriminatory comments about Reed's age (*id.* ¶ 22) and that "a discriminatory reason directly motivated Defendant's actions" in demoting Reed (*id.* at 16). ACI argues that Ingram, not Riddle, made the decision to remove Reed from her position as

---

[3] As noted by the *Pierson* court, Tennessee case law generally required plaintiffs to only prove that age was "'a determining factor'" to establish liability under the THRA. 749 F.3d at 536 n.2 (citing *Flynn v. Shoney's, Inc.*, 850 S.W.2d 458, 460 (Tenn. Ct. App. 1992)). However, in light of *Gross* and in the absence of a definitive statement by the Tennessee Supreme Court, the Sixth Circuit has applied the "but-for" standard to age discrimination claims under the THRA. *Id.* (citing *Blandford v. Exxon Mobil Corp.*, 483 F. App'x 153, 157 (6th Cir. 2012); *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485 n.7 (6th Cir. 2010)). *But see Stewart v. Cadna Rubber Co.*, No. W2013-00670-COA-R3-CV, 2014 WL 1235993, at *5–8 (Tenn. Ct. App. Oct. 16, 2013) (applying the "determining factor" standard to an age discrimination claim under the THRA post-*Gross* but without substantial discussion).

Store Manager, so Riddle's comments do not constitute direct evidence of discrimination. (Doc. No. 17 at 10–11.)

"To prevail on direct evidence at the summary judgment stage . . . plaintiffs must prove by a preponderance of the evidence that age was the 'but-for' cause of the challenged employer decision." *Sharp v. Aker Plant Servs. Grp.*, 726 F.3d 789, 798 (6th Cir. 2013) (internal quotation marks, brackets, and ellipsis omitted). Direct evidence of discrimination is "evidence from the lips of the defendant proclaiming his or her . . . animus." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (quotations omitted). It is "evidence which, if believed, requires the conclusion that unlawful discrimination was the motivating factor in the employer's actions. It does not require the fact finder to draw any inferences to reach that conclusion." *Sharp*, 726 F.3d at 798 (6th Cir. 2013) (citations, internal brackets, and quotation marks omitted). In evaluating "statements allegedly showing an employer's age bias," the Court considers whether the statements were: (1) made by a decision maker; (2) made in relation to the decision-making process; (3) not isolated, vague, or ambiguous; and (4) made proximate in time to the discriminatory act. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002). "None of these factors is individually dispositive of age discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into account." *Id.* (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994)).

At issue here are statements allegedly made by Riddle to Reed and two of Reed's coworkers. First, Reed averred that she overheard Riddle telling some of Reed's sales representatives before the demotion that Reed was "too old to keep up" and should retire. (Doc. No. 21-2 ¶ 12.) Two employees of the McMinnville store, Lacy Stoner and Joann Barnes, averred that they also heard Riddle make remarks about Reed's age before she was demoted.

8

Stoner "overheard Sherry Riddle say that Virginia was too old to keep up. I heard her say that she was going to make changes in our store." (Doc. No. 21-17 ¶ 4.) Barnes stated Riddle wanted Reed to quit because of her age, and that Riddle thought Reed would quit if she were demoted, but Riddle said "One way or the other, I'm going to get rid of her." (Doc. No. 21-18 ¶ 5.) Barnes also "heard Sherry Riddle say on numerous occasions that Virginia was to [sic] old and can't do her job anymore." (*Id.*)

"In assessing the relevancy of a discriminatory remark, [the Court] look[s] first at the identity of the speaker." *Sharp*, 726 F.3d at 798 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir.1998)). Here, as direct evidence Reed presents only statements by Riddle, Reed's district manager and direct supervisor.[4] (*See* Doc. No. 21 at 17.) ACI argues that Riddle's statements are not relevant because co-owner Steve Ingram, or "someone other than Sherry Riddle," made the decision to remove Reed from her position (Doc. No. 25 at 2), and a "statement by an intermediate level management official is not indicative of discrimination when the ultimate decision . . . is made by an upper level official" (Doc. No. 17 at 11 (quoting *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161 (6th Cir. 1990))). However, the proposition cited by ACI has since been clarified by the Sixth Circuit. In *Ercegovich*, 154 F.3d at 354–55, the Court explained that "the *McDonald* rule was never intended to apply formalistically, and . . . remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful

---

[4] Reed also claims that Ingram demoted her a second time "when she declined his encouragement to retire," and that this constitutes further direct evidence of discrimination. (*See* Doc. No. 21 at 17.) However, Reed cites no evidence, and this Court finds no support in the record for this claim. To the contrary, Reed states in her deposition that Ingram asked her if she wanted to "leave" instead of taking the further demotion to sales representative. (Doc. Nos. 16-1 at 95; 16-2 at 27.) Leave is a synonym for "quit," not "retire," but even if Ingram had asked about retirement, without more this would not constitute direct evidence of age discrimination because it "requires that an inference be drawn before 'Why don't you retire' can become evidence of a discriminatory animus like 'Why don't you retire; you're too old.'" *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006).

role in the decision to terminate the plaintiff, [are] relevant." Furthermore, in recent years the Sixth Circuit has consistently held that "[d]iscriminatory remarks by decision makers and those who significantly influence the decision-making process can constitute direct evidence of discrimination." *Sharp*, 726 F.3d at 798 (citing *Bartlett v. Gates*, 421 F. App'x 485, 489 (6th Cir. 2010); *DiCarlo v. Potter*, 358 F.3d 408, 416 (6th Cir. 2004)); *see Johnson v. Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003). Reed can therefore satisfy this factor if she presents evidence that Riddle had significant influence over the decision to demote Reed.

The Court finds Reed has presented evidence that Riddle had at least a significant influence in the decision to demote Reed to Manager of Business Account Development. First, Reed cites Riddle's letter to ACI's Human Resources department in which Riddle appears to justify her decision to remove Reed from her position as Manager of the McMinnville store, writing: "I did not in any way consider what I did to be demotion [sic] . . . I explained to Virginia because of the lack of production and quota attainment, I was being forced to make some changes to get back on track." (Doc. No. 21-23 at 2.) Second, when Ingram was asked whether he was "involved in any discussions . . . concerning demotion of Virginia versus terminating her," Ingram testified "No. I said [to Riddle] whatever you think is going to work best. I said, if you think we should terminate her, terminate her. If you think you can find another position for her, then keep her. Do whatever you think is best for her and the company." (Doc. No. 21-5 at 17.) Thus, according to Ingram, the decision whether to move Reed, and if so to what position, was in Riddle's hands. Finally, Riddle states she came up with the idea of the Manager of Business Account Development position (Doc. No. 16-8 at 20), a claim that is corroborated by Reed's assertions that Riddle came up with the new title on the spot on a napkin (Doc. No. 21-2

¶ 11) and that it was "up to Sherry [Riddle]" whether Reed would be reimbursed for mileage and gas as part of her compensation in the new position (Doc. No. 16-1 at 19).

The Court acknowledges that ACI has presented some evidence that Riddle did not influence the decision to demote Reed. For instance, Ingram testified that Riddle wrote she was "being forced to make some changes" because he wanted her to make a change in McMinnville. (Doc. No. 21-5 at 15.) Likewise, Kimbrough Dunlap, one of ACI's other co-owners, testified that Ingram came up with the outside sales position for Reed. (Doc. No. 21-4 at 10.) However, on a motion for summary judgment this Court must not weigh the evidence, a function reserved for a jury. *See Anderson*, 477 U.S. at 255. Viewing the evidence in the light most favorable to Reed, Riddle herself determined what Reed's new position would be and therefore had at least significant influence over the decision-making process.

Under the second factor in the direct evidence analysis, the Court considers whether the substance of the remarks relates to the decision-making process for the employment decision at issue. *Peters*, 285 F.3d at 477. For instance, in *Hale v. ABF Freight Systems*, 503 F. App'x 323, 331 (6th Cir. 2012), a direct supervisor with decision-making authority stated that the plaintiff "is going to leave here when he is 62. I am going to see to it"; the court found the statement was made in relation to the decision-making process because it "clearly connected [plaintiff's] age to [the decision-maker's] plans to terminate him." However, a remark need not be so baldly discriminatory to be relevant. For example, in *Brewer v. New Era, Inc.*, No. 13-5237, 2014 WL 1673755, at *5 (6th Cir. Apr. 29, 2014), a manager's statements that an employee was "too old" and "needed to retire," made two months before the employee was laid off, were sufficient direct evidence to deny the employer's motion for summary judgment.

Here, Reed has presented evidence that Riddle made repeated comments that Reed was too old and needed to retire. Riddle told Barnes that Reed was too old to do her job anymore and that she thought she would quit if she were demoted, but "one way or the other, I'm going to get rid of her." (Doc. No. 21-18 ¶ 5.) Likewise, Riddle told Stoner that Reed was too old to do her job and so Riddle was going to make some changes to the store. (Doc. No. 21-17 ¶ 4.) Riddle's statements connect her plans to demote Reed with Reed's age. Reed has therefore presented evidence that Riddle's statements were made in relation to the decision-making process.

Under the third factor in the direct evidence analysis, the Court considers whether the remarks are isolated, vague, or ambiguous. "'[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus.'" *Sharp*, 726 F.3d at 798 (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir. 2008)). Instead, "'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, satisfy this criteria.'" *Id.* (quoting *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (internal quotation marks omitted)). For instance, in *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012), a non-decision-maker's inquiry as to the plaintiff's retirement plans was too general to constitute direct evidence of age discrimination because the inquirer did not suggest that the plaintiff should retire. On the other hand, in *Sharp* a decision-maker's statement that he terminated plaintiff because he "had an opportunity to bring the next generation in" was not vague or ambiguous because it explained the employment decision was based on age. 726 F.3d at 796–99.

Here Riddle's statements were not isolated, vague, or ambiguous. Reed's evidence, if believed, shows that Riddle made multiple comments that Reed could not perform her job

12

because of her age and so Riddle was going to "make some changes" to the store or try to get rid of Reed "one way or another." (Doc. Nos. 21-17 ¶ 4; 21-18 ¶ 5.) Reed has presented evidence that Riddle made multiple relevant comments that were not isolated, vague, or ambiguous, but rather were "blatant" and "whose intent could be nothing other than to discriminate on the basis of age." *See Sharp*, 726 F.3d at 798.

Under the fourth and final factor in the direct evidence analysis, the Court considers whether the discriminatory remarks were made proximate in time to the adverse employment decision. *Peters*, 285 F.3d at 478. While remarks made three weeks before the adverse employment event have been considered proximate, *DiCarlo*, 358 F.3d at 417, the Sixth Circuit has noted that a gap of "seven months [is] longer than most cases in which this court has recognized temporal proximity," *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 528 (6th Cir. 2012).

In this case, Reed's demotion took effect on June 1, 2010. (Doc. No. 22 ¶ 5.) Reed does not state when she overheard Riddle say she was too old to keep up and should retire. (*See* Doc. No. 21-2 ¶ 12.) Lacy Stoner's affidavit likewise does not explain when she overheard Riddle's remarks. (*See* Doc. No. 21-17 ¶ 4.) However, according to Reed, Riddle told Barnes that she wanted to demote Reed because of her age in November 2009. (Doc. No. 16-1 at 36.) Reed also stated that Stoner was present at that occasion (*see id.*), though Barnes states that she overheard Riddle making similar remarks on "numerous occasions" (Doc. No. 21-18 ¶ 5), so it is unclear whether the incident described by Stoner is the same as the incidents described by Barnes. In any case, the conversation between Riddle and Barnes took place between six and seven months before Reed's demotion, at the outer limits of permissible temporal proximity.

Although the only remarks for which Reed provides a date took place up to seven months before Reed's demotion, this Court considers all four factors "as a whole, taking all of the circumstances into account." *Peters*, 285 F.3d at 478. If Reed's evidence is believed, Riddle had a significant influence over the decision to demote Reed. Riddle's remarks were related to that decision because they expressed her desire to get rid of Reed because of her age. Moreover, Riddle's remarks were not isolated or ambiguous, but repeated and blatantly discriminatory. Considering all four factors as a whole, Reed has provided enough evidence under the first three factors to make up for any weakness in the final factor. This Court finds that Reed has presented direct evidence of discrimination from which a jury could conclude ACI violated the ADEA. Accordingly, there is a disputed issue of material fact and ACI's Motion is **DENIED**.

   1. Indirect Evidence

 In the absence of direct evidence, a plaintiff may rely on circumstantial evidence to establish age discrimination. ADEA claims based on indirect evidence are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Blizzard*, 698 F.3d at 283. The Tennessee Supreme Court abandoned the *McDonnell Douglas* framework as incompatible with Tennessee summary judgment jurisprudence in *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 785 (Tenn. 2010) and subsequently noted that the framework was thus inapplicable even in THRA cases, *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25–26 (Tenn. 2011). However, the Sixth Circuit has since held that *Gossett* is inapplicable in federal courts, such that the *McDonnell Douglas* standard still applies to THRA claims filed in federal court. *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 463 (6th Cir. 2014). Accordingly, the Court will apply *McDonnell Douglas* to Reed's THRA claims as well.

Under *McDonnell Douglas*, the plaintiff must first make out a prima facie case of discrimination; if she is successful, the burden then shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason' for the termination." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). "'If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext.'" *Id.* (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 576 (6th Cir. 2012) (quoting *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir.2000)).

### i. Prima Facie Case

To establish a prima facie case of age discrimination a plaintiff must present evidence of the following elements: "'(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.'" *Blizzard*, 698 F.3d at 283 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). Reed asserts that she has met this burden because she has presented evidence that she is sixty-five years old, she was qualified for her position as Store Manager because she "ran one of the top producing stores for Defendant for years," she was demoted from her position as Store Manager, and she was replaced by someone fifteen years her junior. (Doc. No. 21 at 16.) For the purpose of its Motion, ACI does not contest that Reed can establish a prima facie case. (Doc. No. 17 at 14.) Accordingly, the Court presumes Reed has established a prima facie case, and the burden shifts to ACI to produce a legitimate, nondiscriminatory reason for discharging Reed.

15

## ii. Legitimate, Nondiscriminatory Reason

To meet its burden under *McDonnell Douglas*, ACI must "raise a genuine issue of fact as to whether it discriminated against [Reed]" by "clearly set[ting] forth, through the introduction of admissible evidence, the reasons" for the adverse employment actions. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814–15 (6th Cir. 2011). ACI contends that the slipping performance rankings of Reed's store during the last few years of her tenure as Store Manager constitute a legitimate, nondiscriminatory reason for removing her from the position. (Doc. No. 17 at 14.) ACI presents charts of its store performance metrics over time, demonstrating that in 2007 the McMinnville store was ranked fifth in production out of all ACI stores, in 2008 it was ranked eighth, in 2009 it was ranked twelfth, and in the first half of 2010, before Reed's demotion, it was ranked thirteenth. (Doc. No. 16-6 at 5–14.) Furthermore, ACI's evidence demonstrates that after Reed was replaced, the McMinnville store's production and ranking improved. (*Compare id.* at 11 *with id.* at 13.) Thus, the Court finds ACI has presented a legitimate, nondiscriminatory reason for demoting Reed.

## iii. Pretext

At this third step of *McDonnell Douglas*, a plaintiff must establish that the employer's stated reason for the adverse employment action is pretexual. *Blizzard*, 698 F.3d at 285. Plaintiffs generally demonstrate pretext in one of three ways, by showing: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). These three categories serve as a "convenient way" to marshal evidence on the ultimate inquiry of whether the employer took adverse action against the employee "for the stated reason or not." *Tingle v. Arbors at Hilliard*,

692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen*, 580 F.3d at 400 n.4). The question at summary judgment then is "whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Chen*, 580 F.3d at 400 n.4. "'[T]o survive summary judgment a plaintiff need only produce enough evidence . . . to rebut, but not to disprove, the defendant's proffered rationale.'" *Carter v. Toyota Tsusho Am., Inc.*, 529 F. App'x 601, 609 (6th Cir. 2013) (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir.2012)).

Reed does not argue that ACI's proffered reason has "no basis in fact"; to the contrary she agrees that the store's production and ranking fell from 2007 to 2009. (Doc. No. 21 at 3–4, 17.) Instead she argues ACI's proffered reasons for her removal either did not actually, or were insufficient to, motivate her demotion.[5]

First, Reed argues that the drop in production was insufficient to motivate her removal and demotion because, amongst other reasons, (1) other store managers saw more serious productivity and rankings declines over the same time period but those managers were not removed from their positions; and (2) the McMinnville store's production had improved by March 2010, before Reed was removed from her position. (*Id.* at 17–19.)

Where a plaintiff seeks to show the employer's proffered reason for her termination was insufficient to motivate its decision, the plaintiff generally presents "evidence that other employees, particularly employees not in the protected class, were not [subject to adverse action] even though they engaged in substantially identical conduct to that which the employer contends motivated its [action against] the plaintiff." *Johnson*, 319 F.3d at 866 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger*, 579 F.3d at 621). To show "substantially identical" conduct, the plaintiff is "simply

---

[5] While heeding the Sixth Circuit's caution against rigidly applying these categories, *Blizzard*, 698 F.3d at 285, the Court finds them to be useful in organizing the arguments presented by Plaintiff in this case.

17

'required to prove that all of the *relevant* aspects of his employment situation were nearly identical to those of [the non-minority's] employment situation.'" *Ercegovich*, 154 F.3d at 352 (alteration in original) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)) (internal quotation marks omitted). The "relevant" factors are those "relevant to the factual context in which the . . . case arose." *Id.*; *see, e.g. Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012); *Madden*, 549 F.3d at 676 (where an employee was disciplined for using firecrackers on the job, the court examined the commonality of firecracker use at the worksite and the severity of the disciplined employee's firecracker use relative to other employees who were not disciplined for similar behavior).

The parties dispute whether the McMinnville store's production decline was sufficiently severe to justify terminating Reed, thus the severity of the decline over time is relevant here. (*See* Doc. Nos. 21 at 17–18; 25 at 2–3.) While Reed contends that Riddle's lack of support for the McMinnville store was at least partially responsible for the store's production decline from 2007 through 2009 (Doc. No. 21 at 17–19), both parties seem to rely on company-wide data, not just data for Riddle's district, to support their arguments (*id.*; Doc. Nos. 17 at 8–9; 25 at 2–3). Therefore, the Court does not find that the identity of the District is relevant.

Reed contends that other stores suffered similar losses over similar time periods are similarly situated to the McMinnville store. (Doc. No. 21 at 17–18; *see* Doc. No. 16-1 at 5, 8–9, 11.) However, Reed presents no evidence that she was similarly situated to any other *manager* because she has not established that any manager worked in any of the similarly situated stores throughout the same time period without suffering adverse employment action as a result of the store's production decline. (*See* Doc. Nos. 16-1 at 75–76; 16-5 at 45–46, 57–61; 16-6 at 8, 9; 16-15 at 63; 21-4 at 48; 21-23 at 3.) At the pretext stage of the *McDonnell Douglas* burden-shifting

18

analysis, the plaintiff bears the burden of production, *Blizzard*, 698 F.3d at 285, but Reed has failed to produce evidence to show that she was treated differently than a similarly situated ACI employee.

Reed also argues that ACI's proffered justification "did not actually motivate the employer's action." Instead, Reed contends that she was removed from her position and demoted because of Spivey and Riddle's discriminatory attitudes towards older workers. (Doc. No. 21 at 19.) In support of this contention, Reed cites (1) multiple examples of instances when she "was singled out by Sherry Riddle" and treated less favorably than other managers (Doc. No. 21 ¶ 15), (2) the statements by Riddle proffered as direct evidence described in Section III.A.1 above, (3) and additional statements by Riddle and Ingram regarding ACI's hiring practices and preferences for younger workers.

To establish pretext by arguing that the proffered explanation did not actually motivate the discriminatory action, a plaintiff can "attack[] the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (citation omitted) (quoting *Manzer*, 29 F.3d at 1084) (internal quotation marks omitted). In determining the relevance of discriminatory remarks presented as circumstantial evidence, this Court looks to the identity of the speaker, whether the remarks are isolated or ambiguous, and the temporal proximity of the remarks to the adverse action. *See id.*; *Johnson*, 319 F.3d at 868.

First, "discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009). Reed

presents remarks by Riddle and Ingram as evidence of pretext. The Court has already determined that both Riddle and Ingram were involved in the decision-making process. Therefore, their comments are probative here.

Second, the Court "must also examine the substance of the discriminatory remarks in determining their relevancy to a plaintiff's claim." *Ercegovich*, 154 F.3d at 355. "Isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Id.* (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993)) (internal quotation marks omitted). As found above in the direct evidence analysis, Riddle's remarks regarding her desire to remove Reed from the store manager position because of her age were neither isolated nor ambiguous.

Reed presents the following as evidence of pretext: (1) Riddle's statements to Reed that she looks for age clues on employment applications in order to weed out older workers from consideration, and that Riddle would not permit Reed to interview or hire applicants over the age of forty (Doc. No. 21-2 ¶ 7); (2) Riddle's statements to Reed on three occasions following an interview with an older candidates that the candidate was "too old," that the interview "wasted her time on an applicant who was too old," and that "you can't train older people for this job" (*id.*); (3) Barnes's observation that "If someone came in to apply for a job and they looked too old, [Riddle] would toss their application in the trash. [Riddle] preferred employees between the ages of 18 and 28" (Doc. No. 21-18 ¶ 3); and (4) Riddle's letter to Human Resources in response to Reed's discrimination charge in which Riddle wrote

> Virginia's statement regarding looking at resumes for age clues (job year ranges and graduation dates) is true. My experience proves that in recruiting, hiring, training, and managing, I am most successful in a certain target market. I have found younger people (under 40) do great with the wireless industry. My target group seems to be able to learn the information quickly without being frustrated;

able to maintain the mass amounts of information that changes very often; inclined to be interested and knowledgeable about electronics, phone features, and phone applications; able to multi-task without being frustrated; willing to work the demanding retail schedule including weekends to name just a few [sic]. Age is not a consideration if the person has a good amount of previous wireless experience.

(Doc. No. 21-23 at 4 (emphasis in the original)).

Reed also claims that Ingram made similar comments about older workers: "both Sherry Riddle and Steve Ingram stressed the importance of looking for young employees, 'young blood.'" (Doc. No. 21-2 at ¶ 7.) Jessy Williams, another ACI employee, averred that "Both Sherry Riddle and Steve Ingram stressed that we should hire young people in our stores. Steve Ingram told us to keep our eyes and ears open for good, young people. He said we should look for 'young blood.'" (Doc. No. 21-9 ¶ 4.) Similarly Barnes stated that "At store manager meetings, Steve Ingram would agree [with Riddle's preference for young employees,] saying the [sic] he wanted us to hire 'young, fresh ones coming out of college.'" (Doc. No. 21-18 ¶ 3.)

As described above, Reed has presented evidence that Riddle made multiple statements to multiple ACI employees regarding her recruiting and hiring practices, thus Riddle's statements were repeated, not isolated. Likewise, the discriminatory meaning of Riddle's statements is clear, not ambiguous, as Reed clearly references certain applicants being "too old" and admittedly screened at least some applications based on age. Moreover, while Ingram's remarks are slightly more veiled than Riddle's, he repeatedly stated a preference for "young blood," "young people," and "fresh ones coming out of college." (Doc. Nos. 21-2 at ¶ 7; 21-9 ¶ 4; 21-18 ¶ 3.) These "remarks on their face strongly suggest that the speaker harbors a bias against older workers." *See Ercegovich*, 154 F.3d at 355.

Finally, the Court considers the temporal proximity of the remark to the adverse employment action. *Id.*; *Clack v. Rock-Tenn Co.*, 304 F. App'x 399, 405 (6th Cir. 2008). As noted in the Court's analysis of Reed's direct evidence, remarks made up to seven months from the adverse action may be sufficiently proximate depending on the circumstances. The Court's analysis of temporal proximity in the circumstantial evidence context is even more flexible. *Ercegovich*, 154 F.3d at 357 (remark made fourteen months prior to employee's termination was relevant); *Clack*, 304 F. App'x at 405 (even though racist comments were made approximately three years prior to the adverse action, "viewing the record in a the light most favorable to the plaintiff, we find nothing to suggest that such a significant level of racial hostility would have been dispelled merely by the passage of time," thus comments could be relevant to pretext analysis). The last of Riddle's discriminatory remarks regarding older applicants was apparently made in November 2009, six to seven months before Reed's demotion and within the same time frame as the remarks Reed presented as direct evidence. (Doc. No. 21-2 ¶ 7.) Therefore, the Court finds that Riddle's remarks are sufficiently temporally proximate to be relevant as circumstantial evidence. Reed does not explain exactly when Ingram made his remarks regarding "young blood," though she indicates that he made these statements sometime in 2007 and 2008. (*See* Doc. No. 21-2 ¶ 7.) Although these statements would likely be too remote from Reed's demotion in June 2010 to qualify as direct evidence, they were made well within the limits of temporal proximity for the purposes of the circumstantial evidence analysis, thus Ingram's comments are also relevant here, especially in light of the fact the remarks were made by a decision-maker and were neither isolated nor ambiguous.

In addition to the Riddle and Ingram remarks, Reed presents evidence that Riddle treated Reed worse than other managers. (Doc. No. 21 ¶ 15.) For instance, Reed states that Riddle was

22

rude and dismissive in store manager meetings in front of other managers. (Doc. No. 16-1 at 21–22.) Both Reed and Williams describe an early-2010 incident in which Riddle chastised Reed for describing her sales goals as a "hope" instead of using more concrete terms, even though Riddle had praised a younger manager who described her goals using the same terminology. (Doc. Nos. 16-1 at 23–24; 21-9 ¶ 3.) Stoner averred that Riddle criticized the McMinnville store at a training meeting in April 2010, and when an employee pointed out that the store had attained 127% of its March sales goal, Riddle asked, "very rudely, 'Well how did that happen?' Instead of being proud of our store, she seemed unhappy that we had made that achievement." (Doc. No. 21-17 ¶ 5.) Reed asserts that other store managers were permitted to hire and fire their own employees but she was not, even though her store was short-staffed. (Doc. Nos. 16-1 at 32, 55, 136; 21-12.) Stoner also stated that the store was short-staffed during Reed's tenure, but that the number of sales representatives grew after Reed was replaced. (Doc. No. 21-17 ¶¶ 2, 6.) Finally, Reed claims that Riddle substantially curtailed her support of the McMinnville store in 2008 and that she lost sales as a result. (Doc. Nos. 21-12; 16-1 at 26–32.)

Considering the evidence Reed presents regarding Riddle's poor treatment of her, as well as the evidence of Riddle and Ingram's discriminatory remarks, the Court finds Reed has presented sufficient circumstantial evidence of age discrimination to permit a jury to find ACI's proffered reason for her demotion was pretext and that she would not have been demoted but for her age.

ACI contends that Reed cannot establish pretext because she cannot show that ACI did not "'honestly believe' in the proffered non-discriminatory reason for its adverse action." (Doc. No. 17 at 14, quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).) The "honest belief" doctrine inoculates an employer against Title VII and analogous claims where it has

"acted upon an honest belief in its non-discriminatory reason [for the adverse action] and made a reasonably informed and considered decision" based on a "sufficiently thorough" investigation. *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 503 (6th Cir. 2009). However, the "honest belief" doctrine appears to apply only where the plaintiff argues that the employer's proffered reason has "no basis in fact." *See, e.g., Braithwaite*, 258 F.3d at 494–95 (applying "honest belief" doctrine, then separately analyzing whether other similarly situated employees were treated differently than the plaintiff); *Blizzard*, 698 F.3d at 286 (applying "honest belief" doctrine, then separately analyzing whether the proffered reason was insufficient to actually motivate discharge); *Ladd*, 552 F.3d 495, 503 (6th Cir. 2009) (same). After all, an employer might satisfy the honest belief doctrine while continuing to engage in discriminatory employment practices by thoroughly investigating and taking action only against employees in the protected class. In this case, both parties agree that Reed does not challenge the factual basis of ACI's proffered non-discriminatory explanation. The honest belief doctrine is therefore inapplicable here.

Accordingly, in addition to the Court's direct evidence determination, the Court finds there is a disputed issue of material fact based on indirect evidence regarding alleged age discrimination against Reed; therefore, ACI's Motion is **DENIED** as to Plaintiff's discrimination claims.

### B. Retaliation Claims

The ADEA prohibits employer retaliation against an employee "because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this [Act]." 29 U.S.C. § 623(d). The THRA likewise prohibits retaliation, Tenn. Code Ann. § 4-21-301(1), and retaliation claims under the THRA are analyzed using the

same standards as ADEA claims, *see Scola*, 557 F. App'x at 463. Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework applicable to ADEA discrimination cases. *Blizzard*, 698 F.3d at 288. Where, as here, the plaintiff presents no direct evidence of retaliation but does present circumstantial evidence, the plaintiff has the initial burden of establishing a prima facie case of retaliation by showing that: "(1) he engaged in protected activity, (2) this exercise of his protected civil rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action." *Imwalle v. Reliance Med. Prods, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008).

Neither party disputes that Reed engaged in a protected activity when she filed her complaint with Human Resources or the EEOC. However, ACI contends that Brenda, the new manager in McMinnville, did not know about Reed's age discrimination claims until long after the allegedly retaliatory behavior took place, thus Brenda could not have retaliated against Reed. (Doc. No. 17 at 19–20 (citing Doc. No. 16-8 at 127).) Reed cites two categories of circumstantial evidence that the new manager knew about her complaint: 1) affidavits of Reed and Dennis Taylor, another McMinnville store employee, averring that Reed's complaints of age discrimination were "common knowledge" in the store (Doc. Nos. 21-2 ¶ 13; 21-25 ¶ 4); and 2) Reed's testimony that less than a month after starting at the McMinnville store, Brenda wrote up Reed for rudeness and told her "I'm very aware that you don't like American Cellular or anything it stands for, but I don't care how you feel, you're going to do the things that I tell you to do, and you might as well like it if you're working here" (Doc. No. 16-1 at 22).

Although a plaintiff will typically be able to show direct evidence that the retaliating actor knew of her protected activity, "direct evidence of such knowledge or awareness is not

required, and . . . a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim." *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002). Mere "conspiratorial theories" are not enough; a plaintiff must present specific facts that would permit a jury to infer the retaliating actor's knowledge. *Id.* For instance, in *Polk v. Yellow Freight Sys.*, 876 F.2d 527, 531 (6th Cir. 1989), a worker engaged in the protected activity of visiting her state civil rights commission to inquire about her rights, and although the worker had no direct evidence of her supervisor's knowledge of this activity, the court found that the supervisor's statement "I know where you've been" was enough to permit an inference of knowledge. Additionally, the Sixth Circuit has acknowledged that "knowledge of a plaintiff's protected activity can be inferred from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action." *Mulhall*, 287 F.3d at 553. Here the statement "I know you don't like American Cellular," made a few weeks after Reed filed her complaint with human resources, is enough to permit an inference that Brenda knew of Reed's complaints, particularly where there is evidence that the sales representatives in the McMinnville store who interacted with Brenda on a daily basis knew of Reed's complaints.

ACI also contends that Reed suffered no adverse employment action, but simply a series of "insignificant or trivial" slights. (Doc. No. 17 at 22.) Reed points to a series of actions that she believes constitute a retaliatory course of conduct by Brenda: (1) the issuance of unfounded "Employee Warning Notice" forms (Doc. No. 16-1 at 26–27); (2) directing other McMinnville sales representatives to tell customers looking for Reed that she no longer worked at the store (Doc. No. 21-25 ¶ 4); (3) reducing Reed's hours after she became a sales representative again in 2012 (Doc. No. 16-1 at 32); and (4) subjecting Reed to a series of humiliations, including searching Reed's handbag in front of customers after a store bank deposit envelope went missing

(*id.* at 34–35). An adverse employment action must be materially adverse to sustain a prima facie case of retaliation; this standard is met when the action would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted); *accord Blizzard*, 698 F.3d at 290. "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington*, 548 U.S. at 68. "Generally, a negative employment evaluation does not rise to this level unless it 'significantly impact[s] an employee's wages or professional advancement.'" *Blizzard*, 698 F.3d at 290 (alteration in original) (quoting *James v. Metro. Gov't of Nashville,* 243 F.App'x. 74, 79 (6th Cir. 2007)).

The Court finds some of Brenda's actions constitute exactly the sort of petty slight or minor annoyance that cannot sustain a prima facie case of retaliation. For instance, Reed provides no evidence that the "Employee Warning Notice" forms issued by Brenda had any impact on Reed's wages or advancement at ACI, or that the forms would dissuade a reasonable employee from making a charge of discrimination. Reed also fails to show the objective impact of the other humiliations doled out by Brenda. On the other hand, Reed presents evidence that she is an hourly employee, her hours were reduced after she was demoted to sales representative, and she was at risk of losing her health insurance because she was no longer scheduled enough hours to be considered a full time employee. (Doc. No. 21-2 ¶ 17.) Reed also presents evidence that Brenda attempted to interfere with Reed's sales efforts. (Doc. No. 21-2 ¶ 14.) Lacy Stoner stated "I heard Brenda tell the sales representatives to tell customers that Virginia wasn't there and to steer her customers to other sales representatives, even when Virginia was in the back of the store." (Doc. No. 21-17 ¶ 6.) Dennis Taylor observed the same behavior. (Doc. No. 21-5 ¶ 4.) ACI customer Dustin Chisam stated that he arrived at the McMinnville store to meet

27

Virginia, was told she "was not there and did not work there," but later discovered she was in the back of the store at the time. (Doc. No. 21-27.) ACI customers Gary Argo and Jennifer Lassiter averred that they had similar experiences. (Doc. Nos. 21-28; 21-29.) After Reed filed her claim with the EEOC, which included a claim for retaliation by Brenda, Reed alleges that this behavior intensified. (Doc. No. 21-2 ¶ 16.) As Reed's income is partly commission-based, Brenda's alleged instruction to tell Reed's customers that Reed no longer worked at the McMinnville store could have had a significant impact on Reed's income. This conduct could dissuade an objectively reasonable worker from making a charge of discrimination.

Finally, ACI insinuates that Reed did not experience retaliation because she has not established causation, however ACI's only argument on this point is that the supposedly retaliatory actions described by Reed amount to little more than a "disagreement with the appropriate treatment" by Brenda. (Doc. No. 17 at 23.) ACI does not address the other allegedly retaliatory actions described above, nor does it address the temporal connection between the beginning of the retaliation and Reed's initial discrimination charge. An employee may establish the causal connection prong of the prima facie case by showing a close temporal proximity between the protected activity and the adverse employment action, thus permitting a jury to "make the reasonable inference that the adverse employment action is so close in time after an employer learns of a protected activity that the action was caused by that activity." *Montell v. Diversified Clinical Servs., Inc.*, Nos. 13-6186, 13-6231, 2014 WL 2898525, at *6 (6th Cir. June 27, 2014); *accord Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). For instance, in *Singfield*, 389 F.3d at 563, where an employee was terminated three months after making a complaint to the EEOC, the Court "conclude[d] that the temporal proximity of these events is significant enough to constitute sufficient evidence of a causal connection for the

28

purpose of satisfying Singfield's burden of demonstrating a prima facie case." Here Reed alleges that Brenda instructed sales representatives to tell customers that Reed did not work at the store within the "first few months after I had switched" from Store Manager to Manager of Business Account Development. (Doc. No. 16-1 at 30.) Reed has thus shown a close enough temporal connection between her charge of discrimination and the beginning of the retaliatory conduct to permit a jury to make the inference that Brenda's retaliatory actions were caused by Reed's complaints.

The second stage of the burden-shifting analysis requires the employer to put forth a legitimate, nondiscriminatory justification for its retaliatory actions. *Singfield*, 389 F.3d at 563. ACI's motion for summary judgment does not address any stage of the burden-shifting analysis beyond Reed's prima facie case. Moreover, while ACI presents what might be considered a nondiscriminatory justification for Reed's write-ups in its argument about Reed's prima facie case of discrimination, ACI does not address Brenda's other retaliatory conduct, such as her direction to McMinnville sales representatives to tell Reed's customers that she did not work at the store. ACI has therefore failed to meet its burden to rebut Reed's prima facie case of retaliation and Reed's retaliation claims survive.

## IV.    CONCLUSION

For the reasons stated above, ACI's Motion for Summary Judgment (Doc. No. 15) is **DENIED**.

It is so ORDERED.

Entered this ____8____ day of August, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

29